UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DONALD RAY SMITH                                              CIVIL ACTION

VERSUS                                                              NO. 18-3719

ROBERT TANNER ET AL.                                         SECTION "M" (2)

**REPORT AND RECOMMENDATION;**
**ORDER AND REASONS ON MOTION**

Plaintiff, Donald Ray Smith, is a prisoner currently incarcerated in the Rayburn

Correctional Center ("Rayburn") in Angie, Louisiana.  He filed this complaint pro se and

in forma pauperis pursuant to 42 U.S.C. § 1983 against Rayburn's Head Warden, Robert

Tanner; Rayburn's medical and security staff; Hunt Correctional Center's ("Hunt") medical

staff and the Louisiana Department of Public Safety and Corrections ("DOC").  Smith

asserts four claims: (1) Rayburn personnel injured him when responding to his seizure on

March 9, 2017. (2) He received inadequate medical care for the injuries he suffered in the

incident on March 9, 2017. (3) He is frequently issued false disciplinary rule violation

reports and remains in extended lockdown as a result. (4) His cell is too small, the food is

inedible, the air is fetid, hygiene is lacking and he is deprived of a mattress.

He seeks $250 million in punitive damages for pain, suffering and humiliation; an

order requiring "the Louisiana Department of Public Safety and Corrections to provide

proper medical care for his broken neck, fractured skull, epilepsy, and stroke"; additional

epilepsy-focused training for the medical and security staffs at Rayburn and Hunt; an order

releasing him from lockdown; and physical therapy.  Record Doc. No. 4 (Complaint at ¶ V).

On July 17, 2018, I conducted a telephone conference in this matter.  Participating were plaintiff pro se and Angela O'Brien, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he is currently incarcerated in Rayburn based upon a conviction on January 13, 2014, for failure to register as a sex-offender, for which he is serving an 18-year prison sentence.  He stated that his release date is February 10, 2023. He confirmed that his claims in this case are based on an incident that occurred while he was incarcerated in Rayburn on March 9, 2017.

Smith confirmed that he asserts four claims.  First, plaintiff alleged that he was injured by prison staff on March 9, 2017.  He testified that on that day, while he was in his dorm at Rayburn, he "felt a seizure coming on."  Smith stated that his last epileptic seizure was about 10 years ago, and he attributed his history of seizures to drug use, although he stated that he has not been convicted of any drug-related crimes.

Plaintiff testified that he received a copy of his medical records, and that they are "mostly accurate."  He disputed that the incident on March 9, 2017 occurred at 7:40 p.m. Smith asserted that the incident actually happened around 3:12 p.m., and he based that time on the rule violation report that was issued after the incident.  Smith confirmed that his

basic claim concerning his injuries is that he was misdiagnosed at the Rayburn infirmary as being intoxicated when in fact he had what he believes was an epileptic seizure.

Plaintiff stated that he knows "how to control his seizures, by laying down in a cool place," which is why he was in his bed on March 9, 2017. Smith confirmed that his medical records show that he hit the floor after he passed out in his bed. He testified that his dorm-mates told him that he was not properly stabilized after he fell from his bed. Plaintiff stated that he does not remember being taken out of the dorm, and he does not remember being in the infirmary at all. He asserted that at some point a nurse asked him where he was hurting, and he responded his head and neck hurt, then he passed out. Smith confirmed the accuracy of a note in his medical records showing that nurse Josh Goff saw him in the infirmary, and he testified that nurse Goff misdiagnosed him as being drunk. Plaintiff stated he did not know whether he was purposefully misdiagnosed. He stated that "they really didn't follow the proper procedure in going through the whole ordeal with a drug test . . . and checking my background with my medical records to see my conditions."

Smith testified that the next thing he remembers is getting up to use the restroom while in lockdown in the early morning hours of March 10, 2017. Plaintiff stated that he tried to turn around, fell back, hit the floor, called for help and a nurse told him that his neck was broken. Smith testified that the nurse told him that he did not have a neck brace. Plaintiff confirmed the accuracy of his medical records, which show that about 12 hours passed between the incident and his transfer to Our Lady of the Angels Hospital at 3:40 a.m. on March 10, 2017.

Smith read aloud Lieutenant James Seal's disciplinary write-up from March 9, 2017,

concerning Smith's incident.  The write-up states,

> Offender Donald Smith, DOC #429663, Date of Incident: 3/9/2017, approximately 3:12p.m. Place of Incident: Wind 2. Job Assignment: Field Crew 11. Housing assignment: Wind 2.  Rule Violation: Intoxication, Rule #14.
>
> On the above date and time, I responded to a beeper in Wind 2.  Upon arrival to bed 54 in Wind 2, I observed offender Donald Smith lying on the floor.  Offender Smith had a scrape on top of his head.  Offender Smith was unresponsive at the time.  Medical was notified and responded to the area.  When offender Smith started to speak, and started responding to questions, he only complained about his head hurting.  Offender Smith's speech was slurred and he could not stand without assistance.  Offender Smith was transported to the infirmary by wheelchair.  Offender Smith vomited once in the infirmary.  Major Williams recorded offender Smith's actions in the infirmary using the body camera.  Offender Smith slurred his speech while answering questions and said he was high.  Offender Smith would not say what he took or smoked to get high.  Per nurse Josh Goff, offender Smith does not take any medication that would cause him to appear to be intoxicated.  Offender Smith was treated for the minor scrape on top of his head.  A picture of the scrape was taken and uploaded in the investigation database.
> . . .
> While observing the video [of Wind 2], I observed that offender Smith was lying on his bed, and started to get out and fell on the floor at 15:12:35.
> . . .
> Offender Smith was placed on administrative segregation and Major Williams was notified.

Smith testified that a doctor from Oschner Hospital in New Orleans diagnosed him

with a stroke and a cervical fracture, for which he was given a cervical collar.  Plaintiff

stated that he was transferred from Oschner Hospital back to Rayburn, and he was sent to

University Medical Center in New Orleans the next day.  He stated that he was also brought

to Hunt in St. Gabriel, Louisiana. Smith testified that he spent seven days in these various facilities.

When asked whether he agrees that his medical records show that his fall and cervical fracture were the result of a stroke, Smith testified that he believes that a seizure caused his fall, the fracture and a stroke. "I really had a seizure," he said, "that's what the doctors told me." Plaintiff stated, however, that he also had a stroke. He stated that his other injuries happened after his seizure and fall. Plaintiff said, "I was not stabilized in the proper manner like I was supposed to be while I was unresponsive. My fellow inmates told me [the staff] shoved me in a wheelchair." Smith asserted that the staff "should have gotten a gurney, a backboard and a neck brace just in case anything was to happen, and next thing you know my neck broke. I don't know how my neck got broke. I know the fall didn't do it because it was just a minor scrape on my head." Plaintiff alleged that the staff's mishandling of him after his fall is what caused his cervical fracture, not the fall itself.

Smith testified that his second claim is that he did not receive adequate follow-up medical care for the injuries he sustained on March 9, 2017. Plaintiff stated that he was in a wheelchair at the time of his <u>Spears</u> testimony, and that he is now partially paralyzed. He testified that he regularly receives medicine including, Gabapentin[1], Tylenol and medicines for high blood pressure and stroke. Plaintiff stated that he sees a doctor and a physical therapist once a month, and that he last saw a doctor in June 2018.

---

[1] "Gabapentin capsules, tablets, and oral solution are used to help control certain types of seizures in people who have epilepsy." Gabapentin, MedlinePlus, https://medlineplus.gov/druginfo/meds/a694007.html (last accessed August 8, 2018).

Smith asserted that his physical therapist does not want to treat him. He testified that the physical therapist only sees him for about five minutes at a time. "I keep complaining about the situation and all the pain I'm suffering, and they're not doing anything about it. . . . I'm begging for rehabilitation." He disputed that he refused physical therapy care on May 4, 2017. Smith testified that he filed an administrative remedy procedure ("ARP") grievance that day against the sergeant who drove him to the physical therapy facility at Hunt because he came out of his wheelchair during the drive. Plaintiff stated that he made a medical emergency request and was taken to the infirmary instead of physical therapy. Plaintiff stated that he tried to walk at his last physical therapy appointment in June 2018, but he was not quite ready. He stated that he is ready to try to walk now.

Smith testified that on March 4, 2018, he hit his head on the side of a toilet after security personnel threw him out of his wheelchair during a strip search, and he was taken by ambulance to Our Lady of the Angels hospital. Plaintiff stated that in order to perform the strip search, security personnel transferred him from his wheelchair to a chair in the shower area. Smith testified that after he put his clothes on, he asked for assistance with getting back into his wheelchair. He stated that a sergeant made racist comments, then threw him into his wheelchair. Smith testified that he fell out of the wheelchair, and the sergeant picked him up and threw him back into the chair.

As to his third claim, plaintiff stated that he is frequently issued disciplinary rule violations because he cannot get out of his wheelchair. He testified that jail personnel are

not taking his condition into consideration while he is in lockdown.  He said, "They have me on isolation.  I'm partially paralyzed.  While on isolation, they have me with no mattress, no pillows, no blanket, no nothing."  When asked what kinds of write-ups he received to be placed in lockdown, Smith responded that he was cited for going into unauthorized areas, for watching television and for using racist language.  He testified that in 2017 he received 50 or more disciplinary write-ups, and that he has already received about 50 write-ups this year.  Smith stated that he is given notice orally of a rule violation; he is given a copy of his rule violation write-ups at his disciplinary hearings; he has had a disciplinary hearing for every write-up; and at the hearing he is told the officer's word is more credible than his.  Smith stated that he makes a statement at each hearing.

Plaintiff testified that he has been in disciplinary lockdown continuously for almost one year.  He stated that he is deprived of a mattress, pillows and blankets, and he has no outdoor recreation, telephone or canteen privileges.  Smith testified that he is in his wheelchair 15 or more hours per day.  He said that he does not know when his term in lockdown is scheduled to end.  Smith testified that every time his lockdown classification comes up for review, officers issue "bogus" write-ups to extend his lockdown time.  "I'm tired of it," plaintiff stated,  "and I really want to rehabilitate myself.  I really want to walk. I really want to do a lot of things, but they are keeping me from doing it."

Finally, as to his conditions of confinement claim, Smith asserted that the conditions in his lockdown cell are poor.  He testified that the food is inedible, and the cell is too small.  Plaintiff stated that he lives alone in an 8x10 cell, which contains a bunk, a toilet

and his wheelchair.  He said, "It's a lot of metal, and a lot of concrete, and they want me to try to stand up and put pressure on my left leg.  I tried to do that and hurt myself twice." Smith alleged that he does not have enough space to try to walk.

Plaintiff's verified medical records, Record Doc. No. 15, indicate that plaintiff has received substantial medical attention for his various medical conditions. For example, on March 9, 2017, he was taken to the "triage room" at Rayburn after his fall and then transported early the next morning to the hospital on Dr. Cleveland's order. Upon examination at the hospital, he was diagnosed with a cervical fracture, prescribed a cervical collar and medications and discharged back to Rayburn several days later, on March 15, 2017. He received medications, including Gabapentin and neurontin for seizures and Toradol for headaches. He was seen on several occasions in response to his requests by medical department personnel at Rayburn and Hunt, including for neck x-rays on April 17, 2017, and an examination in a neurosurgery clinic. He was transported to the hospital again on September 4, 2017, after another fall, and treated for a concussion, including being given a CT scan with negative findings. In early October 2017, he was transported again to University Medical Center for reassessment. He underwent an MRI in November 2017, was transported to University Medical Center for examination in the neurosurgery clinic in February 2018, and was sent again to the hospital on March 4, 2018 and x-rayed after hitting his head on a toilet. His medical records indicate that he has been seen on numerous occasions since then by Rayburn and Hunt medical personnel and provided with ibuprofen and Tylenol.

Following the <u>Spears</u> hearing, I ordered plaintiff to provide further information in writing concerning his claim that he has been deprived of a mattress. Record Doc. No. 20. In his written response, plaintiff clarified that as part of his punishment in lockdown for prison disciplinary violations, his mattress has been removed from his cell "during daylight hours" on the days listed in his response. Record Doc. No. 21.

## ANALYSIS

I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); <u>Thompson v. Hicks</u>, 213 F. App'x 939, 942 (11th Cir. 2007); <u>Lewis v. Estes</u>, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998);  <u>Lewis v. Sec'y, DOC</u>, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), <u>aff'd</u>, 589 F. App'x 950 (11th Cir. 2014).  After review in the screening process, the court must "identify cognizable claims or dismiss the complaint" if it or portions of it are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); <u>Lewis</u>, 589 F. App'x at 952; <u>Thompson</u>, 213 F. App'x at 942; <u>Shakur</u>, 391 F.3d at 113; <u>Carr v. Dvorin</u>, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A

complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728 (1992)), and may consider and rely upon additional evidence, as

long as it is properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed, in whole or in part, as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's claims against individual defendant Robert Tanner, Rayburn's medical and security staff, Hunt's medical staff and the Louisiana DOC must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous,

because his claims lack an arguable basis in law, or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.

## II.    MERE NEGLIGENCE

Plaintiff alleges that his cervical fracture was caused by Rayburn staff mishandling him after he fell out of his bunk on March 9, 2017.  In addition, he alleges that this mishandling "precipitated a stroke."  Record Doc. No. 4 at p. 3.  These allegations at best assert a state law tort or negligence claim, if that, not a claim of civil rights violations cognizable under Section 1983.  Claims arising from allegedly negligent acts do not give rise to relief under Section 1983.  The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328 (1986); Davidson v. Cannon, 474 U.S. 344, 347 (1986).  In a number of other contexts, other courts have determined that allegations amounting to mere negligence cannot support a Section 1983 claim.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence insufficient to support failure to protect claim under Section 1983); Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").  Therefore, plaintiff's mere negligence claim must be dismissed.

- 12 -

In addition, it is clear that plaintiff's claims that prison officials mishandled him in the March 9, 2017 incident is barred by prescription or the applicable statute of limitations. The district court may raise the limitations issue sua sponte in a suit filed in forma pauperis under 28 U.S.C. § 1915. Wilke v. Meyer, 345 F. App'x 944, 945 (5th Cir. 2009); Lopez-Vences v. Payne, 74 F. App'x 398, 2003 WL 22047325, at *1 (5th Cir. 2003) (citing Gartrell v. Gaylor, 981 F2d 254, 256 (5th Cir. 1993)). "'Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.'" Stanley v. Foster, 464 F.3d 565, 568 (5th Cir. 2006) (quoting Harris, 198 F.3d at 156).

Although Section 1983 has no statute of limitations, the Louisiana prescription statute is applicable to suits in federal court under Section 1983.

> Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.
> For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. The Supreme Court has held that prescription begins to run at the point when "the plaintiff can file suit and obtain relief."

Duplessis v. City of New Orleans, No. 08-5149, 2009 WL 3460269, at *4-5 (E.D. La. Oct. 26, 2009) (McNamara, J.) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)) (citing La. Civ. Code art. 3492; Wallace, 549 U.S. at 387; Wilson v. Garcia, 471 U.S. 261, 275 (1985); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998); Gonzales v. Wyatt,

157 F.3d 1016, 1020 (5th Cir. 1998); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994); Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989)).

The date when the Clerk of Court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints. Martin v. Demma, 831 F.2d 69, 71 (5th Cir. 1987). However, in the pro se prisoner context, the date when prison officials receive the complaint from the plaintiff for delivery to the court is considered the time of filing for limitations purposes. Stevenson v. Anderson, 139 Fed. Appx. 603, 2005 WL 1367766, at *1 (5th Cir. 2005); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995); Harrell v. Edwards, No. 05-4002, 2007 WL 734387, at *4-5 (E.D. La. Mar. 6, 2007) (McNamara, J.); see also Thompson v. Raspberry, 993 F.2d 513, 515 (5th Cir. 1993) (pro se prisoner's objection to magistrate's report and recommendation deemed filed when forwarded to prison officials for delivery to court).

In this case, the earliest date on which prison officials could have received the instant complaint from plaintiff for mail delivery to this court is April 4, 2018, the date that plaintiff signed the complaint. Record Doc. No. 4-1 at p. 5. Thus, Smith's complaint is considered to have been filed and this action commenced on April 4, 2018 for limitation purposes, which is more than one year after the alleged mishandling occurred on March 9, 2017.

The Fifth Circuit has held that the prescriptive period commences when the aggrieved party either has knowledge of the violation or notice of the facts which, in the

exercise of due diligence, would have led to actual knowledge thereof.  Piotrowski v. City

of Houston, 51 F.3d 512, 516 (5th Cir. 1995) (citing Vigman v. Community Nat'l Bank

& Trust Co., 635 F.2d 455, 459 (5th Cir. 1981)).  As a direct participant in the March 9,

2017 event, he clearly knew that he had been injured when it occurred and had notice of

the facts on which to base any claim. Because the date of the incident was more than a

year before the instant action commenced, plaintiff's claim has prescribed and must be

dismissed with prejudice.

III.    MEDICAL CARE

        Plaintiff's second claim is that he has been provided with constitutionally inadequate

medical care during his incarceration. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the

Supreme Court held that a convicted prisoner may succeed on a claim for damages under

42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been

"deliberate indifference to serious medical needs" by prison officials or other state actors.

Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts

repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth

Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-82 (1976).

"Deliberate indifference" means that a prison official is liable "only if he knows that the

inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take

reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

In the Section 1983 medical care context, a showing of deliberate indifference to serious medical needs "requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).

> The Supreme Court has recently affirmed that "deliberate indifference" is     a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his

action.   Board of the County Commissioners of Bryan County,
Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997).  The
deliberate indifference standard permits courts to separate omissions
that "amount to an intentional choice" from those that are merely
"unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (additional citations

omitted).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for

deliberate indifference."  Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that

nothing more than episodic acts as defined in Hare are at issue.  See Tamez, 589 F.3d at 770

(defendants' alleged refusal "to provide [prisoner] with immediate medical treatment

qualifies as an 'episodic act or omission'").  Therefore, the "deliberate indifference"

standard applies, and Smith must allege facts sufficient to establish that defendants knew

he faced a substantial risk of serious harm or disregarded that risk by failing to take

reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient

to satisfy the stringent "deliberate indifference" standard.

I assume for purposes of this report and recommendation that plaintiff's stroke,

seizure and cervical fracture presented serious medical needs for constitutional purposes.

Smith has alleged facts, however, confirmed by his testimony and the verified medical

records, that negate any inference of deliberate indifference or other constitutional violation

by defendants.  Smith's complaint, as amended by his testimony and confirmed by the

medical records, shows that he received constitutionally adequate medical care while

incarcerated for his various medical conditions.

- 17 -

Smith testified, and the medical records confirm, that while incarcerated at Rayburn, he has been seen by physicians and other medical personnel, including a physical therapist, monthly, and regularly provided with medicine, x-rays, CT scans, an MRI and other treatment, including several trips to the hospital.  See Grayer v. GEO Corp. Office Group, Inc., 602 F. App'x 213, 214 (5th Cir. 2015) (no deliberate indifference when plaintiff received conservative treatment, including physical therapy, after he was evaluated by a doctor); Radunz v. Muhlhausen, 375 F. App'x 618, 620-21 (7th Cir. 2010) (no deliberate indifference when inmate received regular medication).

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent in any way to plaintiff's medical conditions.  While it is clear from his allegations and testimony that Smith is not satisfied with the speed or nature of his medical care, no finding of deliberate indifference can be made based on this record.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added).  No such showing has been made on the current record.  In Smith's case, the decisions of the jail's health care providers regarding how to treat him after his fall, are classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation.  Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.  Wilson, 501 U.S. at 298.  No such showing can be made in this case in light of the continuing monthly medical attention Smith has received for his injuries during his incarceration.

Contentions like Smith's that amount to a disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  Even any alleged misdiagnosis of his seizure/stroke as intoxication cannot constitute a constitutional violation under these circumstances.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute deliberate indifference, even if treatment was negligently administered); see Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice. . . .");  see also Corte v. Schaffer, 24 F. 3d 237, 1994 WL 242793, at *1 (5th Cir. 1994) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by

prison medical personnel with results being within a normal range.); <u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Plaintiff's medical records show that he has been provided with extensive medical care. His claim that he was misdiagnosed on March 9, 2017 does not change this court's finding that plaintiff's medical records disprove any allegation of deliberate indifference. "Even if he was in fact misdiagnosed, '[i]t is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.'" <u>Joyner v. Tanner</u>, No. 17-10040, 2018 WL 3682514, at *5 (E.D. La. July 9, 2018) (citing <u>Domino</u>, 239 F.3d at 756; <u>Estelle</u>, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); <u>Kelly v. Gusman</u>, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007) (misdiagnosis of eye infection constituted mere malpractice and, therefore, was not actionable under § 1983; <u>Cerna v. Tex. Tech. Med. Staff</u>, No. 2:03-CV-0322, 2014 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004) (misdiagnosis of "gangrenous, ruptured appendix nearly resulting in plaintiff's death and 'loss of various body organs'" was not a constitutional violation but rather "a violation of a tort duty of care and must be pursued in state court.")).

Plaintiff's complaints in this case about medical care fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish "deliberate indifference" under the applicable constitutional standard. His medical care claim must therefore be dismissed.

IV.   FALSE DISCIPLINARY CHARGES/EXTENDED LOCKDOWN

Smith's claims that his constitutional rights were violated based on false or fabricated disciplinary charges resulting in his placement in extended lockdown and loss of privileges fail to state a claim of violation of his constitutional rights and must be dismissed.

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process rights relating to his placement in lockdown or other denial of prison privileges as disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists. "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459 U.S. 460, 466 (1983). In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (citations omitted). Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the

procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974),
and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of
confinement which has a substantial adverse effect upon a prisoner."  <u>Madison v. Parker</u>,
104 F.3d 765, 767 (5th Cir. 1997).  "Prisoners held in lawful confinement have their liberty
curtailed by definition, so the procedural protections to which they are entitled are more
limited than in cases where the right at stake is the right to be free from confinement at all."
<u>Wilkinson v. Austin</u>, 545 U.S. 209, 225 (2005) (citations omitted).  The Fifth Circuit in
<u>Madison</u> held that a prisoner's 30-day commissary and cell restrictions imposed as
punishment for disciplinary violations were "merely changes in the conditions of his
confinement and do not implicate due process concerns." <u>Madison</u>, 104 F.3d at 768; <u>accord
Hernandez v. Velasquez</u>, 522 F.3d 556, 563 (5th Cir. 2008); <u>Dixon v. Hastings</u>, 117 F.
App'x 371, 372 (5th Cir. 2005); <u>Milch v. Thayer</u>, 211 F.3d 953, 957-58 (5th Cir. 2000).  In
<u>Hernandez</u> and <u>Madison</u>, the Fifth Circuit held that such restrictions do <u>not</u> represent the
type of atypical, significant deprivation in which a state might create a liberty interest.
<u>Hernandez</u>, 522 F.3d at 563; <u>Madison</u>, 104 F.3d at 768.

For example, prisoners have "'no right to unlimited telephone use.'  Instead, a
prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate
security interests of the penal institution.'" <u>Washington v. Reno</u>, 35 F.3d 1093, 1100 (6th
Cir. 1994) (quoting <u>Benzel v. Grammar</u>, 869 F.2d 1105, 1108 (8th Cir. 1982); <u>Strandberg
v. City of Helena</u>, 791 F.2d 744, 747 (9th Cir. 1986)).  "Prisons legitimately impose a

variety of restrictions on an inmates' use of telephones." Ray v. Stanley, No. 02-CV-555-JD, 2005 WL 2290276, at *7 (D.N.H. Sept. 20, 2005) (citing United States v. Lewis, 406 F.3d 11, 13 (1st Cir. 2005); Gilday v. Dubois, 124 F.3d 277, 293 (1st Cir. 1997); Spurlock v. Simmons, 88 F. Supp. 2d 1189, 1193 (D. Kan. 2000)).

Examples of prison hardships that would qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital and extension of the prisoner's sentence for his underlying criminal conviction. Sandin, 515 U.S. at 484. In addition, the Supreme Court has held that solitary confinement in a "Supermax" facility imposes an atypical and significant hardship that creates a liberty interest in avoiding such a placement when all of the following factors are taken together: almost all human contact, including cell to cell conversation, is prohibited; the light is on for 24 hours per day; exercise is for 1 hour per day, but only in a small indoor room; the placement is indefinite and is reviewed just annually; and placement disqualifies an otherwise eligible inmate from parole consideration. Wilkinson, 545 U.S. at 223-24.

In the instant case, Smith alleges that he was placed and continues to be housed in lockdown based upon more than 100 rule violations. He testified that he had been in extended lockdown for about one year at the time of his Spears hearing. Sandin makes clear that no particular process is required, unless something more than a mere change in condition of confinement occurs. Sandin, 515 U.S. at 484; Madison, 104 F.3d at 768. Smith's own testimony establishes that his stay in lockdown deprived him only of certain

limited prison privileges, including canteen, telephone, outdoor recreation and mattress restrictions, without any "atypical, significant deprivation" that might rise to the level of constitutional concerns, such as loss of good time credits. See Lander v. Lamartiniere, 515 F. App'x 257, 259 (5th Cir. 2013) (loss of canteen privileges and transfers to different cellblocks did not implicate liberty interest that required due process); Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010) (citing Milch, 211 F.3d at 958) ("Loss of privileges and cell restriction do not implicate due process concerns."); Hernandez, 522 F.3d at 563 (distinguishing the "extreme conditions" described in Wilkinson and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); Payne v. Dretke, 80 F. App'x 314, 2003 WL 22367564, at *1 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause"). Smith has failed to make any showing that the time spent in lockdown extended his total time in prison or otherwise resulted in atypical, significant hardships. Sandin, 515 U.S. at 484; Hernandez, 522 F.3d at 563; Madison, 104 F.3d at 768. As the record stands, nothing about Smith's stay in lockdown, including his loss of privileges, resulted in a violation of his due process or other constitutional rights.

Even if some process might be required for these sorts of prison disciplinary penalties, it is clear that Smith received the full panoply of procedural rights contemplated by Wolff. He was issued a written statement concerning the charges against him, notifying

him of the charges against him.  He received hearings before the disciplinary board, and  he was provided with an opportunity to make a statement on his own behalf at those disciplinary hearings.

Courts must accord great deference to prison officials' administrative decisions and should not interfere with legitimate prison administration, including the substantial interest in maintaining prison order and discipline, in the absence of a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). Section 1983 claims are not bases for an inmate's appeal of the fact-findings of a prison disciplinary board.  Such claims may proceed only where a showing of a constitutional violation has adequately been asserted.  No such violation has been stated in this case.

V.    CONDITIONS OF CONFINEMENT

Smith was a convicted prisoner at all times that form the basis of his claims in this case.  Regardless of whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case.  McCarty v. Zapata Cty., 243 F. App'x 792, 794 (5th Cir. 2007) (citing Gibbs v. Grimmest, 254 F.3d 545, 547 (5th Cir. 2001); Hare, 74 F.3d at 636); Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999).  In Hare, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eight Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective

knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.

Here, nothing in plaintiff's particular situation or in the circumstances concerning his treatment as described in his Spears testimony leads to an inference that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's act or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645; see Branum v. Chambless, 250 F. App'x 99, 102 (5th Cir. 2007) (upholding district court's dismissal of plaintiff's medical care claims because he had not alleged any specific reasons why his placement in a segregation cell caused a substantial risk to his safety or health). Thus, the complained-of harm is a particular act or omission of one or more officials, and the deliberate indifference standard enunciated in Estelle, 429 U.S. at 104, applies. Olabisiomotosho, 185 F.3d at 526; Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009).

Applying this standard, Smith's allegations do not constitute violations of the Constitution. Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described.

First, the alleged deprivation must objectively be "sufficiently serious," which means that "the inmate must show that he is incarcerated under conditions posing a substantial risk

of harm." Farmer, 511 U.S. at 847.  To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need  for sanitary conditions." Alexander v. Tippah Cty., 351 F.3d 626, 630 (5th Cir. 2003) (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)).

Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Farmer, 511 U.S. at 847.  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added). As noted above, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Southard, 114 F.3d at 551 (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. at 410 (other quotations omitted)) (emphasis added).  "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

Smith's written allegations and testimony meet neither of these two requirements. The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.  Smith alleges no serious harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in plaintiff's testimony and written submissions.

The Constitution requires that prison officials provide prisoners with only reasonably adequate food, shelter and sanitation.  Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004) (citing Farmer, 511 U.S. 832).  Courts have repeatedly held that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions.  Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)); accord Hernandez, 522 F.3d at 560.

None of Smith's allegations about the conditions he experienced at the jail when he was allegedly provided with "inedible" food and deprived of a mattress and outdoor recreation, phone and canteen privileges, establish constitutional violations. See Davis, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); Eady v. Head, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment."); Davis v. St. Charles Par. Corr. Ctr., No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing Talib, 138 F.3d at 215; Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (Inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized

living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional."); Tasby v. Cain, No. 16-0277-JJB-EWD, 2017 WL 4295441, at *10 (W.D. La. Sept. 12, 2017) (no Eighth Amendment violation because plaintiff did not allege he was unfed, unclothed or unsafe, and extended lockdown classification was the result of more than 190 disciplinary write-ups in an 18-year period).

Plaintiff complained that the food he was given was inedible. States violate the Constitution if they fail to provide prisoners with reasonably adequate food, shelter and sanitation. Newman v. Alabama, 599 F.2d 283, 286 (5th Cir. 1977), rev'd in part on other grounds sub nom Alabama v. Pugh, 438 U.S. 781, 915 (1978); George v. King, 837 F.2d 705, 707 (5th Cir. 1988); Gates v. Collier, 501 F.2d 1291 (5th Cir. 1974). However, Constitutional standards require only that prison authorities provide an inmate with "sufficient nutritional value to preserve health." Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999); Green, 801 F.3d at 770 (quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977)).

Plaintiff has failed to allege facts to establish a deprivation of or deviation from this quality of food. The Constitution does not require that convicted inmates be provided with particular foods or every culinary amenity which one may find desirable. Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom., Bell v. Wolfish, 441 U.S. 520 (1979) (citing Newman, 559 F.2d at 291); Murray v. Matty, 1985 WL 4948 at *1 (E.D. Pa. 1985). The Constitution also does not require that convicted inmates be provided

three meals a day or that the meals be served hot.  Green, 801 F.2d at 770; see Hamm v.

DeKalb Cty., 774 F.2d 1567, 1575 (5th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) ("The

fact that the food occasionally contains foreign objects or sometimes is served cold, while

unpleasant, does not amount to a constitutional deprivation.").

Plaintiff has also failed to allege facts sufficient to establish a deprivation or

derivation from any constitutional requirement for adequate shelter.  Gates, 376 F.3d at 332.

As to the lack of a mattress, the Fifth Circuit has not rendered a binding precedential

decision concerning the constitutionality of a temporary mattress deprivation, but it

addressed a situation similar to that alleged by Smith in an unpublished opinion.  The district

court vacated the jury's verdict, which had found that depriving the plaintiff inmate of a

mattress, blanket and toilet paper for two and one-half days violated the Eighth Amendment,

and granted judgment as a matter of law to the prison official defendants.  The Fifth Circuit

affirmed.

> The denial for two and one-half days of a mattress, a blanket, and toilet paper, without more, to an inmate with a cold [who was] confined indoors [in northern Mississippi in November] does not constitute a deprivation of the minimal civilized measures of life's necessities.  Although the conditions of [plaintiff's] confinement were uncomfortable and even harsh, the conditions did not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

Phillips v. East, 81 F. App'x 483, 2003 WL 22770162, at *2 (5th Cir. 2003) (citing Turner

v. Safley, 482 U.S. 78, 89 (1987); Palmer v. Johnson, 193 F.3d 346, 351-52 (5th Cir. 1999);

Talib, 138 F.3d at 215; Novak v. Beto, 453 F.2d 661, 665-66 (5th Cir. 1971)); see also Swift

v. Huffman, 80 F. App'x 946 (5th Cir. 2003) (judgment for defendants affirmed when

prisoner held for two weeks without bedding or a pillow while misconduct was investigated).

Phillips was in a different procedural posture than the instant case, having proceeded through a trial on the merits, and the Fifth Circuit considered the evidence that had been introduced at trial concerning defendants' legitimate penological reasons for depriving the inmate of a mattress. Nevertheless, the appellate court plainly stated that the denial of a mattress for two and one-half days to an inmate who is incarcerated indoors does not violate the Eighth Amendment. Phillips is persuasive authority that the Fifth Circuit would find that Smith's temporary lack of a mattress during daylight hours was not unconstitutional. Several other circuits have held that deprivation of a mattress for a limited period of time is not per se unconstitutional. See, e.g., Fischer v. Ellegood, 238 F. App'x 428, 2007 WL 1624315, at *4 (11th Cir. 2007) (sleeping on floor for five days does not violate Eighth Amendment); Stephens v. Cottey, 145 F. App'x 179, 2005 WL 1971700, at *1 (7th Cir. 2005) (no Eighth Amendment violation when prisoner slept without a mattress on a metal bedframe for three days and on the floor with no bedframe for five days); Grissom v. Davis, No. 02-1916, 2003 WL 343248, at *2 (6th Cir. Feb. 12, 2003) (seven days without mattress, sheets or blanket was not deprivation of basic human needs when it did not cause serious harm); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 84 (8th Cir. 1996) (sleeping on concrete slab without mattress or blanket for four days in cell ten feet from exterior door during winter did not deny plaintiff minimal civilized measures of life's necessities);

Schroeder v. Kaplan, No. 930017123, 1995 WL 398878, at *2 (9th Cir. July 7, 1995)

(sleeping on floor without mattress for four weeks does not violate Eighth Amendment).

In a recent split decision, the Fourth Circuit addressed a plaintiff's deprivation of a

mattress for four months.  The appellate court vacated and remanded to the district court for

further proceedings, finding that "[b]y focusing only on the injury Appellant actually

suffered, the [district] court erred by ignoring the risk of harm posed by depriving someone

of a mattress for over four months."  Putney v. Likin, 656 F. App'x 632, 637 (4th Cir. 2016).

One judge from the panel of three concurred in part, dissented in part and concurred in the

judgment.  In reference to the mattress deprivation issue, he wrote,

> [W]hen children or young adults participate in sleepovers or "crash" at each
> other's apartments, sleeping on the floor and using only blankets and pillows,
> they do not deprive themselves of a basic human need.  Neither do soldiers on
> a mission away from their barracks, nor hikers on the trail.  In fact, people
> have slept without mattresses from time immemorial, and do so routinely even
> today, using only blankets and some form of headrest to serve as a pillow.
>
> Understandably, [plaintiff] has not yet advanced any precedent to support his
> position that a mattress on its own, qualifies as an indisputable life necessity,
> but this is a matter that must be explored by the district court on remand.
> Failing such support for his claim, [plaintiff] would fail, as a matter of law, to
> satisfy the objective prong of the test that governs such claims–the prong
> requiring that he show that he suffered an extreme deprivation of a basic
> human need.

Id. at p. 642 (J. Niemeyer, concurring in part, dissenting in part and concurring in the

judgment).

In the instant case, plaintiff's medical records show that he was moved to a

segregated cell on April 28, 2017, due to his belligerent behavior.  Smith was admitted to

administrative segregation again on February 3, 2018 for a rule violation. Plaintiff filled out health care request forms on September 12, 20, October 9 and 23, November 1 and 2, 2017 and April 11, 2018, asking for a mattress and a pillow. Notes from his doctor's call visits on September 28, October 17, November 28, 2017 and February 27, 2018 indicate that Smith complained of neck and back pain due to the removal of his mattress and pillow. After his doctor's call visit on November 28, 2017, Smith was allowed to have extra pillows. A neurosurgery note from February 7, 2018 indicates that he no longer needed extra pillows. Smith's supplemental written response to my order for additional information concerning this claim indicates that he was deprived of a mattress only during daylight hours for disciplinary reasons.

Smith alleges no serious harm or risk of serious harm in the constitutional sense as a result of his temporary deprivation of a mattress. He concedes that the only illness or other kind of injury or problem he experienced as a result of the conditions were issues with attempting to walk, which stem from his pre-existing cervical fracture, not any prison condition. Thus, Smith has not alleged sufficiently serious harm resulting from these problems to satisfy either the objective or subjective components required to state a claim for unconstitutional conditions of confinement. Under these circumstances, plaintiff has failed to state a cognizable claim of constitutional magnitude, and his claim concerning the conditions of his confinement must be dismissed for failure to state a cognizable constitutional claim under Section 1983.

## VI.    WARDEN NOT LIABLE

Smith makes no claim that Warden Tanner was personally involved in any of the alleged acts or omissions upon which plaintiff's claims are based.  "There is no respondeat superior liability under Section 1983."  Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 609 F.2d 744, 746 (5th Cir. 1983).  To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Sanders, 950 F.2d at 1159-60.  In the instant action, plaintiff has failed to establish either of these two criteria.

## VII.    IMPROPER DEFENDANTS

Smith has named the medical staffs of Rayburn and Hunt and the security staff at Rayburn as defendants.  However, a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under Section 1983, as the statute and case law define that term.  Cage v. Kent County Corr. Facility, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir. 1997); Johnson v. LCDC Med.

Staff, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009) (suit against

medical staff dismissed because "the Medical Staff is not a suable entity under § 1983");

Holifield v. Mobile County Sheriff's Dep't, No. 07-0321-CG-C, 2008 WL 2246961, at *5

(S.D. Ala. May 29, 2008) (citations omitted) (suit dismissed because the prison medical care

unit "does not appear to be a distinct legal entity that is subject to suit"); Cullen v. DuPage

County, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14,1999); Whitley v.

Westchester County Corr. Facility Admin., No. 97CIV0420(SS), 1997 WL 659100, at *6

(S.D.N.Y. Oct. 22, 1997); Sponsler v. Berks County Prison, No. 95-1136, 1995 WL 92370,

at *1 (E.D. Pa. 1995); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993).

VII.    MOTION TO AMEND

On September 17, 2018, after the Spears hearing, plaintiff submitted a letter to the

court which, construed broadly, will be addressed as a motion to amend his complaint. In

his letter and its attachments, plaintiff complains that his ARP grievance concerning the

alleged failure of Rayburn officials to provide him with a "handicap van" for transportation

to a scheduled medical appointment on July 19, 2017, was not properly investigated and was

wrongfully denied.

The policy of the Federal Rules of Civil Procedure is liberal in favor of permitting

amendment of pleadings, and Rule 15(a) evinces a bias in favor of granting leave to

amend.  Unless there is a substantial reason to deny leave to amend, the discretion of the

district court is not broad enough to permit denial.  Stripling v. Jordan Prod. Co., 234 F.3d

863, 872 (5th Cir. 2000) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Leffall v. Dallas Indep. Sch. Dist.</u>, 28 F.3d 521, 524 (5th Cir. 1994); <u>Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.</u>, 195 F.3d 765, 770 (5th Cir. 1999); <u>Dussouy v. Gulf Coast Inv. Corp.</u>, 660 F.2d 594, 597-98 (5th Cir. 1981)). Thus, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but such leave "is by no means automatic." <u>Wimm v. Jack Eckerd Corp.</u>, 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted). Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." <u>Id.</u> As to futility, the Fifth Circuit has held:

> It is within the district court's discretion to deny a motion to amend if it is futile. While this court has not specifically defined "futility" in this context, we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted. As these courts have done, to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6).

<u>Stripling v. Jordan Prod. Co., LLC</u>, 234 F.3d 863, 872-73 (5th Cir. 2000) (quotations and citations omitted).

In this instance, permitting the proposed amendment to add a claim concerning the allegedly defective handling of plaintiff's ARP would be futile because no such claim exists as a matter of law under Section 1983. The Fifth Circuit has held that an inmate "does not have a federally protected liberty interest in having these [ARP] grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due

- 36 -

process violation arising from the alleged failure to investigate his grievances is indisputably meritless."  Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995); Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995)); accord Bell v. Woods, No. 09-41000, 2010 WL 2545421, at *2 (5th Cir. June 18, 2010); Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010), cert. denied, No. 09-10742, 2010 WL 1942272 (Oct. 4, 2010). "Additionally, [plaintiff] could not show any injury from the failure [adequately] to consider his grievances because the alleged [actions of jail officials of which] he complained . . . in the grievances did not implicate his constitutional rights."  Bell, 2010 WL 2545421, at *2.

In this case, plaintiff commenced the prison's ARP concerning his complaint.  The attachments to his written submission to this court include the response of a prison official to his grievance. Record Doc. No. 23 at pp. 3, 5. Plaintiff's complaint is that he was not satisfied with the response, which he alleges was inadequately investigated and erroneously decided contrarily to the prison doctor's "offender duty status" report. Id. at p. 6. In the constitutional sense, an ARP, at most, may be viewed as a means of effectuating plaintiff's First Amendment right to petition the government for redress of grievances.  In this instance, plaintiff's grievance was received and processed through the ARP, although the ARP did not end with the result plaintiff desired.  The Fifth Circuit has indicated that allegations that a prison official has failed adequately to follow internal prison procedures, such as an ARP, cannot support a Section 1983 claim, without an

independent constitutional violation.  Eason v. Thaler, 73 F.3d 1322, 1325-26 (5th Cir. 1996). "[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process."  Stanley v. Foster, 464 F.3d 565 (5th Cir. 2006) (quoting Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996)).

For these reasons, permitting plaintiff to assert a claim concerning his ARP in this instance would be futile because he cannot state a cognizable constitutional claim as a matter of law. His motion to amend must be denied.

## ORDER AND RECOMMENDATION

For all of the foregoing reasons, **IT IS ORDERED** that plaintiff's motion to amend, Record Doc. No. 23, is **DENIED.**

**IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____ 5th day of November, 2018.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.